**04-CV-05397-ORD**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

JAMES A. SIGGELKOW,

                Plaintiff,

       v.

TRANSALATA CENTRALIA
GENERATIONS, LLC,

                Defendants.

Case No.  C04-5397 JKA

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the court on defendant's motion for summary judgment . The court has reviewed all materials submitted in support of and in response to said motion, as well as the files and records herein.

Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) on or about January 30, 2004. The EEOC issued a Dismissal and Notice of Right to Sue. Thereafter, on July 12, 2004, plaintiff filed this action alleging discrimination under the Age Discrimination in Employment Act (ADEA) 29 U.S.C. 623, and the Washington Law Against Discrimination Act (WLAD)

ORDER
Page - 1

1 RCW 49.60.

2  Defendant moves for summary judgment alleging (1) plaintiff cannot show defendants failure to hire

3 him was related to age; (2) defendant had legitimate, non-discriminatory reasons for hiring other candidates;

4 and (3) plaintiff cannot\demonstrate that defendant's reasons for selecting other candidates were pretext for

5 age discrimination. Plaintiff responds alleging the existence of age related questions of fact regarding

6 defendants employment screening mechanism, employers consideration of the passage of time in hiring

7 decisions, and pretextual explanations for hiring persons other than the defendant.

8

9 ## UNDISPUTED FACTS

10  The following facts appear to be undisputed:

11  1. Plaintiff attended two years of college. Plaintiff had been employed by defendant/predecessor

12 from 1973 to 1981. His last job with plaintiff began in 1978 as a Plant Equipment Operator (PEO)

13 following a six month training program in a classroom environment.

14  2. In 1981 plaintiff left his employment with defendant to run the family farm.

15  3. Plaintiff also worked as an equipment operator/truck driver for a construction company. In

16 1991 plaintiff acquired an Operating Engineers License and ran a commercial boiler for a laundry service

17 in Tacoma, Washington where he continues to work.

18

19  4. In 2000 defendant's parent company acquired the assets of the company and invested

20 $500,000,000 in technology and equipment upgrades.

21  5. Since plaintiff's departure from the company the following changes affecting the

22 responsibilities of a PEO have occurred: (1) switches utilized to operate the thermal systems changed from

23 programmable logic controls (PLC) to digital (DCS) technology; (2) DCS controls use a computerized

24 interface run through Ovation, a software product; and (3) major equipment changes including

25 responsibility for the scrubber, a new water treatment plant, and the combined cycle gas turbine at the Big

26

27 ORDER
Page - 2

Hanaford Project. The parties *dispute* the extent to which these changes would impact the plaintiff's ability perform the responsibilities of a PEO without retraining.

6. Since 2001 the responsibilities of a PEO included (1) operation of the scrubber; (2) operation of the water treatment plant; (3) operation of the boiler ash removal systems; (4) operation of other outside systems, including cooling towers, pumping stations and a sewage treatment plant; (5) obtaining and analyzing water chemistry samples; and (6) monitoring and operating auxiliary equipment for gas turbines, gas compressors and cooling towers as well as obtaining and analyzing water chemistry samples, all at the Big Hanaford Project.

7. In 2003 defendant advertised for the hiring of five PEOs whose qualifications would allow them to "hit the road running." This decision was an alternative to opening up the positions to employees within the company performing other jobs who would have to be trained for the position.

8. Plaintiff and 129 other candidates applied for the five PEO positions. Defendant's Human Resource person, Joye Morris, screened the applications against a predetermined set of knowledge, skills, and abilities, in order to determine which candidates met the minimum qualifications. Plaintiff and 58 other applicants moved in to the next round for consideration.

9. Defendant's hiring manager, Thorn, reviewed the 59 applicants and advanced 20 of the applicants to the next round – a telephone interview. Plaintiff was not among the 20 names forwarded for further consideration. Thorn sought out the opinion of two employees (Rotz and Wiles) who had worked at the site during plaintiff's previous tenure. They were not supportive of plaintiff, describing a "poor work ethic" and "poor attitude."

10. Plaintiff was 53 years old when he applied for the job with defendant for which he was not hired. The five persons hired as PEOs were ages 48, 44, 42, 32, and 30. Three, being over age 40, were in the protected class for purposes of age discrimination.

ORDER
Page - 3

11. There is no written or verbal evidence of an "ageist" attitude towards hiring.

12. Thom remarked that plaintiff had done nothing in 23 years to keep his PEO training current or to obtain training or related experience at a modern power plant.

## THE LAW

Age discrimination is prohibited by both Federal and State law. Both the ADEA and the WLAD forbid discrimination against an employee on the basis of age in the hiring process.

A plaintiff may establish a prima facie case of discrimination under the ADEA and WLAD by showing that he was between ages 40 and 70; that he applied for and was qualified for a position; that his application was rejected and that a younger person was hired for the position. In *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308 (1996) the court noted that the fact that a person was replaced by a person "substantially" younger is far more relevant than the fact that he was passed over in favor of someone outside the protected class. Although the defendant concedes that plaintiff was in the protected class (over 40 years of age) and minimally qualified for the job, did not get hired, and that two of the five persons hired were "substantially" younger were hired, they call to the court's attention that three of the five persons hired were not "substantially" younger (ages 48, 44, and 42). The *Connor* court goes on to state, "the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case required 'evidence adequate to create an inference that an employment decision was based on a discriminatory criterion." This court finds absolutely no evidence, direct or circumstantial, from which a "discriminatory criterion" could be inferred.

Assuming, however, that a prima facie case could be established, the burden would shift to the defense to come forward with a legitimate, non-discriminatory reason(s) for the decision not to hire plaintiff. Defendant offers two: (1) plaintiff was less qualified that those persons hired; and (2) the negative feed back Thom received from Rotz and Wiles.

ORDER
Page - 4

1

## DISCUSSION

2   It is clear that plaintiff applied for a job with defendant, was over the age of 40, and was not hired.

3   It is not clear to the court that he was qualified for the job, i.e. that he could commence doing the work

4   immediately and without substantial retraining.   Assuming for purposes of this motion, however, that the

5   defendant was qualified, and that plaintiff could establish a prima facie case, the court must examine the

6   alleged legitimate, non-discriminatory reasons for hiring persons other than plaintiff.

7
### 1. Persons Hired:
8

9   *a. Lonnie Palmateer.*

10  • Employed in power generation industry longer (28 years)  than plaintiff and

11     more recently by defendant.

12  • Had not held the position of PEO.

13  • Had worked as an Operator at various hydroelectric generation plants up to

14     the time of his hire.

15  • Had worked at the Centralia facility;  had worked with Thorn in the past.

16  • Forty Eight years old at the time of hire.

17
*b. Robert Freeman.*
18

19  • Employed in power generation industry longer (26 years) and more recently

20     than plaintiff.

21  • Had worked 15 years as a Control Room Operator which generally requires

22     a greater understanding of all plant systems than a PEO.

23  • Had experience with DCS controls, scrubbers and combined cycle turbines.

24  • Forty four years old at the time of hire.

25  *c. Sarah Lowery.*

26

27  ORDER
Page - 5

* Eleven years experience in the power generation industry.
* Experience with DCS controls.
* Written program code and operating manual for DCS controls.
* Five years management experience.
* Graduate of Navy nuclear power school; operator on Navy nuclear plants.
* Forty two years old at the time of hire.

### d. *Menard Avevalo*.

* Bachelor of Science degree
* Graduate of Navy nuclear power school; 6 years experience operating Navy nuclear power plant systems..
* Thirty two years old at the time of hire

### e. *Christopher Sherin*.

* Bachelor of Science degree in Marine (Mechanical) Engineering
* Recent experience as a Marine Engineer, including operation of steam propulsion plants, high pressure boilers and scrubbers.
* Leadership experience.
* Thirty years old at time of hire.

**2. Negative feed back from Rotz and Wiles regarding plaintiff.** It is undisputed that Thorn inquired of employees Rotz and Wiles regarding plaintiff's prior work with at the cite and that they described a "poor work ethic" and "poor attitude."

The foregoing are legitimate, non-discriminatory reasons for hiring person other than plaintiff. Therefore, plaintiff has the burden of establishing that the defendant's reasons are pretextual. In support of this burden plaintiff suggests the following as evidence of pretext.

ORDER
Page - 6

1. Failure to acknowledge plaintiff's two year stint at the University of Washington more than two decades prior to the hiring process. This argument ignores the more recent, more applicable, and more complete educations of the younger hires.

2. Failure to give greater weight to plaintiff's prior experience at the plant also fails to rise to the level of pretext considering the experience was more than 20 years ago, after which plaintiff's career path took different directions.

3. The notion that failure to hire plaintiff after a 23 year absence is suggestive of age discrimination because plaintiff has aged over the "passage of time" is nothing more than transferring the consequences of plaintiffs career/life choices to the defendant and attaching an age discrimination label. If this argument, based on the plaintiff's actions rather than the defendants carried the day, it would be tantamount to reverse discrimination.

4. Plaintiff suggests that Thorn's failure to follow up with questions seeking specific examples from Rotz and Wiles regarding plaintiff's poor work ethic and attitude somehow negates the right of Thorn to consider these responses as he evaluated the applicants. Absence evidence of "ageist" criterion, or reason to disbelieve Rotz and Wiles, this court cannot micro-manage in hind sight the depth of Thorn's inquiry

4. The suggestion that defendant's reasons for not hiring plaintiff are pretextual because the piping configuration had not changed significantly in 23 years is without merit. The piping map was not an instrumentality determinative of Thorn's decision in evaluating the applicants and their ability to "hit the road running."

## CONCLUSION

There is no evidence before this court, direct or circumstantial, from which a jury could infer disparate treatment of plaintiff based on his age.

ORDER
Page - 7

1

## **Defendant's Motion for Summary Judgment is granted.**

2

3                                      November 14, 2005

4                                      /s/ J. Kelley Arnold
5                                      U.S. Magistrate Judge, J. Kelley Arnold

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ORDER
     Page - 8